UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Prena P. Jackson,

  Plaintiff,

vs.

               Case No. 07-14184

               DISTRICT JUDGE JULIAN ABELE COOK
Michael J. Astrue            MAGISTRATE JUDGE STEVEN D. PEPE
Commissioner of Social Security,

  Defendant.
_____/

## Report and Recommendation

**I.**  **BACKGROUND**

Prena P. Jackson brought this action under 42 U.S.C. §§ 405(g) and 1383 (c)(3) to challenge a final decision of the Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

  **A.**  **Procedural History**

Plaintiff applied for DIB and SSI on March 30, 2005, alleging she was disabled as of February 2, 2003, as a result of asthma, arthritis, obesity, raised blood pressure and depression (R. 44, 214, 198, 61). On August 24, 2005, Plaintiff's application was denied (R. 35-39). A hearing was held before Administrative Law Judge ("ALJ") Richard Sasena on March 22, 2007

1

(R. 206). Plaintiff was represented by counsel. Vocational Expert ("VE") John Stokes also testified (R. 224-228).

ALJ Sasena issued a May 25, 2007, decision finding Plaintiff not disabled because she had the residual functional capacity to perform a wide range of sedentary exertional work (R. 10-22). On August 7, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 4-6).

### B. Background Facts

#### 1. *Plaintiff's Hearing Testimony*

Plaintiff was 43 years old, 6'3" tall and weighed 425 pounds at the time of the hearing (R. 212). She was living with her 3 children and received Medicaid health insurance. Plaintiff's only source of income was from the Family Independence Program, $340.00 a month, in addition to food stamps (R. 213). Plaintiff has a GED and has gone through several training programs including phlebotomy, word processing and date entry. Plaintiff's previous work included senior audit analyst and office manager jobs (R. 225). Plaintiff last worked in May of 2005, as a telemarketer for approximately one and a half months before being fired for missing too many days (R. 11).[1]

Plaintiff testified to four conditions that interfered with her ability to work: (1) pain in her knees, (2) arthritis in her knees and ankle, (3) hypertension, and (4) asthma (R. 211). She reported pain in both of her knees, the right being more painful than the left. Her pain was at a level of 10 everyday for the past four years (R. 213-214). The pain could vary due to the weather and at its best she had a pain level of 5 in her knees (R. 214). In order to ease the pain, Plaintiff

---

[1]The ALJ noted earnings records show that Plaintiff had earned $1060.95 during 2005 (R. 15, 55).

would put ointment and compresses on her knees, but noted the pain was worse than when she first applied for disability in 2005.

Plaintiff stated that the pain in her right ankle was worse than that in her knees and reached a level greater than 10 (R. 214-215). When the ankle pain was unbearable she called her doctor for a prescription (R. 215). Plaintiff reported her ankle pain was worse when she walked and sometimes she had bursts of pain while sitting.

Plaintiff has had asthma since age 18. In 2004 and 2005, Plaintiff went to the emergency room about eight times each year due to problems with her asthma (R. 216).[2] She also reported being admitted in the hospital for three or four days in 2006. Plaintiff noted that her asthma was worst at age 30 but had since improved.

Plaintiff also had difficulty sitting for between 30 – 60 minutes because of the pain in both her knees and ankles (R. 220). She testified that she was able to stand for 15 to 20 minutes at a time and could walk about half a block. Plaintiff was able to lift things from a seated position. Between three and five days a week Plaintiff used a non-prescribed cane to walk around the house.

Plaintiff took six medications for her various ailments (R. 215-216). For her arthritis Plaintiff took Indocins and Tylenol 3 (R. 215). Her asthma was treated with Albuterol and Advair inhalers. Plaintiff also took Lasix for her hypertension, Novastan for an unidentified ailment, and one medication that she could not remember by name.

---

[2] Although Plaintiff testified she visited the emergency room about eight times each year because of her asthma, ALJ Sasena noted that [emergency room records show] she only visited the emergency room for her asthma once a year in years 2004, 2005, and 2006 (R. 19). Additionally, there are only two emergency room reports where Plaintiff went to the emergency room with complaints about her chest, breathing or asthma (R. 107-140).

Plaintiff could handle some of her daily needs including dishes and cooking occasionally with the use of a rolling chair (R. 217). Her daughters did the majority of the cooking and the shopping. Plaintiff has shopped with her youngest daughter but required an electric cart by the end of the day. The outdoor chores, like cutting the grass and shoveling the snow, were done by either her daughters or a neighbor whom she paid. Plaintiff stayed in her home most of the time, except for doctor appointments and when she took her daughter to basketball practice (R. 223-224).

Plaintiff quit smoking about five months prior to the hearing and stopped drinking alcohol two years prior to the hearing (R. 217-218). She previously used crack cocaine for one and a half to two years, but stopped using about two years before the hearing (R. 218).

Plaintiff was being treated by Dr. Laurens for her knees and Dr. Rueben for her ankle (R. 219)[3]. In order to improve her knees, Plaintiff was making an effort to loose weight by eating healthier. She was instructed not to exercise because of her ankle. To occupy her day she played solitaire, watched TV and completed puzzles (R. 219, 221).

Plaintiff also had problems with her blood pressure, had persistent headaches and some dizziness (R. 221-222). She noted that she has headaches that last all day five or six days a week and dizziness two to three times a week.[4]

Plaintiff was depressed about her inability to care for herself, crying three or four times a week (R. 223). Though she was not taking medication for depression, Plaintiff was seeing someone at the Eastwood Clinic.

---

[3] There are no reports or exam records from either Dr. Laurens or Dr. Rueben in the record.
[4] There are no medical reports that address Plaintiff's headaches or dizziness.

## 2. *Medical Evidence*

On January 1, 2003, Plaintiff was examined in the emergency room at Sinai-Grace Hospital because of a cough; Plaintiff's history of asthma was noted (R. 123). On August 21, 2003, Plaintiff's hand was evaluated by Philip Lewalski, M.D. at Detroit Receiving Hospital (R. 119). Plaintiff went to the emergency room because of complaints that she smashed her finger while helping to move a refrigerator.

On May 5, 2004, Plaintiff was examined at St. John Hospital because of complaints of pain in her throat and ears (R. 132). Her history of asthma and arthritis were noted and the provisional diagnosis was an exacerbation of her sinusitis and asthma (R.132-136). It was also noted that she had "no loss" on examination of her extremities (R. 135).

On August 26, 2004, Plaintiff was examined by Jeffrey King, M.D. in the emergency room of Detroit Receiving Hospital because of complaints of a toothache (R. 114-115). Plaintiff's history of asthma was again noted (R.114). On September 1, 2004, Plaintiff was seen in the emergency room at Detroit Receiving Hospital because her left eye was swollen (R. 112). Binesh Patel, M.D. examined the Plaintiff and noted a past medical history of her tooth problem, asthma and arthritis. Dr. Patel noted that her gait and station were normal (R. 113).

On January 19, 2005, Plaintiff was examined by Rosemarie Fernandez, M.D. in the emergency room of Detroit Receiving Hospital because of difficulty breathing (R. 108-109). Her past history of hypertension, asthma and arthritis were noted in addition to a history of tobacco use and past alcohol abuse (R. 109).[5] A medical report dated January 6, 2005, from

---

[5] This is the first mention in the emergency reports of Plaintiff's history of hypertension. In this report it is also noted that Plaintiff has a family history of hypertension. In the September 1, 2004, emergency report there is a contrary note of no family history of hypertension and a denial of tobacco, alcohol or illicit drug use ( R. 112). Additionally, in the June 10, 2005, examination by Dr. Patel, Plaintiff gave a negative history for smoking and alcohol (R. 148).

Eastwood Clinics noted a history of polysubstance abuse (R. 127-130). Plaintiff was examined at Park Medical on February 24, 2005, her hypertension, arthritis, obesity, asthma and depression were noted (R. 140-141). The record contains brief records of substance abuse counseling in March 2005 (R. 127-30).[6] On April 14, 2005 Plaintiff was examined again at Park Medical, and the same conditions were noted (R. 138-139). On April 25, 2005, Herb Weisenthal, D.O. examined Plaintiff's knees at Park Family Health Care; a mild narrowing of the medial compartment of the both knees was noted (R. 142).

On June 10, 2005, Plaintiff had a psychiatric examination for the disability determination service by A. Kumar, M.D. (R. 143-146). Dr. Kumar diagnosed her with depressive disorder, a history of crack cocaine use in partial remission and dependent personality traits (R. 146). On June 10, 2005, Plaintiff was also examined by an internist, Dr. P. Patel, who concluded that the Plaintiff suffers from asthma, hypertension, arthritis in her knees, ankles and elbows, and obesity (R. 149). In a mental residual functional capacity assessment dated July 1, 2005, Dr. James Tripp, PhD, found Plaintiff's depression to be mildly limiting (R. 156). She was found to have only mild difficulties maintaining concentration, persistence or pace (R. 168). On July 25, 2005, Plaintiff was examined by Anurag Malani, M.D. who noted that Plaintiff was morbidly obese and that her right knee and right ankle were both tender (R. 177). Dr. Malani diagnosed Plaintiff with arthritis, asthma and hypertension.

---

[6] In the counseling records Plaintiff is noted as not depressed, contrary to the depression noted in the Park Medical exams (R. 130).

### 3. *Vocational Evidence*

ALJ Sasena asked VE Stokes to consider an individual about Plaintiff's age, considered a younger individual, and with her education of a GED or more (because Plaintiff had some computer training courses), who is limited to sedentary work, "couldn't climb ladders, could occasionally climb stairs, occasionally balance, stoop, kneel, crouch and crawl, and would have to avoid concentrated exposure to dust, fumes and gases" (R. 226). VE Stokes testified that this hypothetical person could perform Plaintiff's past job as a senior audit analyst, as it is traditionally preformed in the national economy, though not as it was actually preformed by the Plaintiff. ALJ Sasena then asked VE Stokes to assume the hypothetical individual was limited to simple, routine or repetitive tasks that require little judgment and could be learned in a short period of time. VE Stokes testified that this would eliminate all of the Plaintiff's past work, but that there were other jobs in the regional economy that the hypothetical individual could perform. In the Michigan economy, these included 3,300 jobs of a receptionist or information clerk, 2,000 jobs of a general office clerk, and 700 production inspectors and testers jobs (R. 227).[7] VE Stokes added that requiring a sit/stand option would not affect the number of jobs he cited.

Plaintiff's counsel asked VE Stokes to assume that the hypothetical individual had a marked restriction on maintaining concentration, persistence or pace. VE Stokes testified that this would limit the hypothetical individual such that she could not perform any jobs in the national economy.

---

[7] In his testimony VE Stokes seems to have misspoken in regards to the number of receptionist and information clerk positions, he said "3,300 jobs in the national economy, approximately 99,000 nationally." Based on his testimony that followed, it is likely he meant 3,300 jobs in the Michigan economy and 99,000 nationally (R. 227).

### 4. *The ALJ's Decision*

ALJ Sasena found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, February 2, 2003 (R. 15). Although Plaintiff worked for approximately one month and one half in 2005, ALJ Sasena considered this an unsuccessful work attempt. Plaintiff's arthritis, obesity, asthma, depressive disorder and polysubstance abuse qualified as severe impairments (R. 15-16). Yet, the Plaintiff's impairments alone or in combination did not meet or medically equal one of the listed impairments in Appendix I, Subpart P of Regulations No. 4 (20 C.F.R. § 404.1520(d), § 404.1525, § 404.1526, § 416.920(d), § 416.925 and § 416.926). ALJ Sasena found that Plaintiff could not perform any past relevant work, but "has the residual functional capacity to perform work reduced by being unable to lift more than ten pounds, being unable to engage in any prolonged standing or walking, needing a sit/stand option, being able to occasionally climb, balance, stoop, kneel, crouch and crawl, no climbing of ladders, no exposure to dust, fumes, and gases, and being restricted to simple, routine, repetitive tasks (requires little judgment, can be learned in short period.)" (R. 16-17, 20).

ALJ Sasena found that although Plaintiff's medically determinable impairments might cause the symptoms she alleged, her statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely credible (R. 18). ALJ Sasena noted that Dr. Patel acknowledged arthritis in Plaintiff's knees, ankles and elbows but that the arthritis in her elbows did not affect her range of motion. Plaintiff's difficulty ambulating was also acknowledged, but ALJ Sasena added that sedentary work typically involves mostly seated work and does not require significant standing or walking. ALJ Sasena observed that the Plaintiff had not visited the emergency room for her arthritis nor had she specially treated it other than with a knee brace and some pain medications. ALJ Sasena opined that Plaintiff's arthritis was likely due to her

obesity and that there was no evidence that she had taken significant steps to address that issue (R. 19). Regardless, he noted that Plaintiff's obesity did not interfere with her ability to perform sedentary exertional work (R. 20).

In regards to Plaintiff's asthma, ALJ Sasena stated that although Plaintiff has asthma she is still able to do a variety of sedentary exertional work (R. 19). Plaintiff had only been to the emergency room once a year for her asthma and has not been since 2006. ALJ Sasena also remarked that though Plaintiff has had asthma for 23 years according to Dr. Malani's report, she was still previously able to work as a senior audit analyst and office clerk.

ALJ Sasena found that although Plaintiff has a depressive disorder and polysubstance abuse she does not meet section 12.04 of the listing of impairments.[8] Her impairments do not impose restrictions on her daily activities. Dr. Kumar noted that Plaintiff said she had many friends and her lack of socialization was because of her knee. Dr. Kumar observed that the Plaintiff was in touch with reality and denied having hallucinations; yet, she also had low self esteem and signs of psychomotor inhibition (R. 144). ALJ Sasena found that she had only a mild restriction on her concentration, persistence and pace.[9] Based, in part, on Dr. Kumar's examination, ALJ Sasena found that Plaintiff did not meet the C criteria of the mental listing of impairments. ALJ Sasena remarked that Section 521 of Public law 103-121 states that alcoholism and/or substance abuse cannot be material to finding a claimant disabled, but he did not make formal findings related to this provision (R. 19).

---

[8] To meet that listing Plaintiff must have marked restrictions on two of the following: daily living activities, social functioning, and attention and concentration, or a marked restriction on one of those factors plus repeated episodes of decompensation, each of extended duration (R. 16).

9

Although Plaintiff cannot perform any past relevant work, based on VE Stokes' testimony and using Medical Vocational rule 201.18 as a framework for his decision, ALJ Sasena determined that there were jobs in the local and national economy that Plaintiff could perform (R. 21). Therefore, ALJ Sasena found that Plaintiff was not disabled.

## II.  ANALYSIS

### A.  Standard of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown,* 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

If the Commissioner seeks to rely on vocational expert testimony to carry his burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform. See, e.g., *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental

10

impairments); *Cole v. Sec'y of Health and Human Servs.,* 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler,* 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger,* 512 F.2d 588, 596 (6th Cir. 1975).

### B. Factual Analysis

In her motion for summary judgement Plaintiff argues that this case should be remanded for computation of benefits because Plaintiff meets or equals the impairment listing 1.02(A). In the alternative to meeting or equaling this listed impairment, Plaintiff argues (1.) that evidence in the record supports a finding of disabled and that her credibility determination was wrongly calculated and (2.) the residual functional capacity presented in the hypothetical to the vocational expert did not properly reflect her impairments.

#### 1. *Listing 1.02*

If the plaintiff has an impairment or a combination of impairments that matches or is substantially equivalent to an impairment in the Listing of Impairments, the applicant is disabled *per se.* 20 C.F.R. Pt. § 404.1520(d). *See Gambill v. Bowen*, 823 F.2d 1009 (6th Cir. 1987). For a plaintiff to show that her impairment meets the requirements of a listed impairment she must show that her medically determinable impairment satisfies all of the criteria of the listing. 20 C.F.R. § 404.1525(d). The plaintiff has the burden of proving that her impairment meets or equals the listed impairment. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999)

Musculoskeletal impairment listing 1.02 includes:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02

The introduction to the musculoskeletal system impairments defines inability to ambulate effectively as:

> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities...

20 C.F.R. Pt.404, Subpt. P, App. 1, 1.00(B)(2)(b)(1)

And goes on to state:

> ...examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inabilty to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt.404, Subpt. P, App. 1, 1.00(B)(2)(b)(2)

Plaintiff fails to meet the criteria for listing 1.02 in two ways: (1) Plaintiff did not present evidence of a gross anatomical deformity, as required in listing 1.02; and (2) Plaintiff failed to

establish her inability to ambulate effectively. There is no evidence presented in the medical record nor in Plaintiff's testimony that supports a finding of gross anatomical deformity. Arthritis and a mild narrowing of the medial compartment of both knees are the only impairments related to Plaintiff's knees that are reported in the record (R. 142, 147). While a narrowing of the medial compartment will satisfy a portion of the requirements for listing 1.02 it will not satisfy the requirement of a gross anatomical deformity.

Plaintiff also failed to establish her inability to ambulate effectively as required to meet listing 1.02. While the ALJ noted that Plaintiff had difficulty ambulating, mere difficulty does not meet the listings definition of ineffective ambulation (R. 18). The definition states that an inability to ambulate effectively exists when the Plaintiff requires the use of a hand held devise limiting to function of both upper extremities. Plaintiff's use of a single cane does not satisfy this definition.

Plaintiff claims that she is unable to ambulate effectively based on her inability to do household chores, shop or drive for long distances (Dkt. #15, p. 6). Plaintiff supports this claim by noting that the listing identifies an "inability to carry out routine ambulatory activities, such as shopping and banking..." as an example of ineffective ambulation. 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A. § 1.00B2b(2). Plaintiff's shopping ability or lack thereof does not satisfy the definition of inability to ambulate for two reasons: (1) Plaintiff can shop to some extent; and (2) meeting an example of ineffective ambulation does not, in itself, satisfy the definition of ineffective ambulation. While Plaintiff claims that she is unable to shop, in her testimony she said that she had shopped with her youngest daughter, but required an electric cart by the end of the day (R. 217). The example in the definition of an inability to shop is meant to represent a more restrictive situation then requiring an electric cart after hours of shopping. Additionally, the

examples and definition section of the introduction are not meant to be mutually exclusive ways of satisfying the listing. If a claimant fails to satisfy a component of the definition on its face, that claimant will not meet the listing regardless of some similarity to an example.

Plaintiff also failed to provide sufficient evidence that her medical impairment *equals* listing 1.02. A claimant's condition is medically equivalent to a condition described in one of the listed impairments "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). This means that claimant must present "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Foster v. Halter,* 279 F. 3d 348, 355 (6th Cir. 2001)(quoting *Sullivan v. Zebley,* 4933 U.S. 521, 531, (1990)).

Plaintiff does not provide sufficient evidence to show that she equals listing 1.02. Plaintiff lacks two criteria required to satisfy listing 1.02; first, there is no evidence Plaintiff suffers from a gross anatomical deformity; second, Plaintiff again failed to show an inability to ambulate effectively. Thus, the ALJ could reasonably conclude that Plaintiff did not meet or medically equal the criterion of Listing 1.02.

### 2. *Plaintiff's Credibility*

Plaintiff contends that the ALJ improperly assessed her credibility as it pertains to her allegations of pain and limitations. Subjective evidence is only considered to "the extent...[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.,* 667 F.2d 524, 538 (6th Cir.

1981); *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476 (6th Cir. 2003). In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

ALJ Sasena found in evaluating Plaintiff's symptoms that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible"(R. 18). In making this determination, ALJ Sasena followed the necessary two step process in which he must first find whether there is objective medical evidence which could reasonably cause the alleged symptoms and then consider all available evidence to evaluate Plaintiff's statements as to intensity, persistence and duration of the symptoms. 20 C.F.R. § 404.1529(a), (c). Here, ALJ Sasena stated that the medical evidence supports the claim that Plaintiff has arthritis, yet he found that "she can still perform a wide range of sedentary exertional work"(R.18). ALJ Sasena noted that Dr. Patel found Plaintiff had arthritis in her knees, ankles, and elbows, however Plaintiff had a normal range of motion in her elbows, shoulders, wrists and fingers and normal strength in both her upper and lower extremities.

Additionally, Joh William, M.D., indicated in his Physical Residual Functional Capacity evaluation that Plaintiff could lift 10 pounds occasionally, could stand or walk for at least 2 hours in an 8 hour work day, and could push or pull without limitation (R. 180). Dr. William stated that Plaintiff's allegation was only partially credible (R. 220). Dr. William also found that Plaintiff's pain was amenable to control with her prescribed medication (R. 180). While Plaintiff indicated she could stand for about 15 to 20 minutes and walk about half a block (R. 220). ALJ Sasena could discount that testimony in light of Dr. William's opinion. Plaintiff also

15

noted that she needed a cane to walk in the house, but then stated that the used the cane about 3 to 5 days a week. ALJ Sasena noted that Plaintiff has not been to the emergency room or hospitalized because of her arthritis, and aside from Tylenol 3, Indomethacine and a knee brace, she had not undergone any special treatment for her arthritis. While the ALJ acknowledged Plaintiff had asthma, he noted that Dr. Malani reported Plaintiff had asthma for 23 years and was able to perform sedentary and light exertional work during that time. Additionally, no treating or examining physician opined that Plaintiff could not work.

In regards to Plaintiff's mental condition, Dr. Tripp reviewed the record in July 2005 and determined that although Plaintiff suffered from depression there were no restriction on her activities of daily living, on her maintaining social functioning, nor did she suffer episodes of decompensation and had only mild limitations on concentration. There is substantial evidence as noted above to support ALJ Sasena's partial rejection of Plaintiff's credibility.

### *3.  Residual Functional Capacity as Presented in the Hypothetical*

Plaintiff argues that ALJ Sasena did not properly account for her severe impairments because:

> "The ALJ made no mention of Ms. Jackson's chronic pain in her knees, has to rotate from sitting to standing at least every half hour to an hour . . . the use of a cane, sitting causes ankle pain, extreme headaches occurring five to six times a week that she has to use ice packs, try to relax and close her eyes. The pain is disabling that she can't read and even sunlight hurts and makes it worse, [and] dizziness that occurs two to three times a week"(Dkt. # 13, p. 12)(Citations omitted)

Contrary to what Plaintiff suggests, the ALJ is not required to list her impairments in a hypothetical question to the VE. *Webb v. Commissioner of Social Security,* 368 F. 3d 629, 633 (6th Cir. 2004). "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb,* 368 F. 3d at 633 (citing *Foster,*

16

249 F. 3d 348). Thus, so long as ALJ Sasena accounted for Plaintiff's limitations in his hypothetical question to the VE, he was not required to list her medical conditions. ALJ Sasena addressed Plaintiff's knee pain, with limits on climbing, kneeling, crouching or crawling and only sedentarily work, as well as her need for sit/stand option in the hypothetical question he posed to the VE (R. 226-227).

The ALJ was not required to include Plaintiff's claim of headaches and dizziness in the hypothetical because those claims were not substantiated by the record. *Stanley v. Secretary of Health and Human Services,* 39 F. 3d 115, 118-119 (6th Cir. 1994)(*Citing Hardaway v. Secretary of Health and Human Services,* 823 F.2d 922, 927-28 (6th Cir.1987). Here, Plaintiff fails to provide any medical records where she reported such symptoms to any treating doctors, or any consultative examiners (R. 143-146, 147-149, 172-178). ALJ Sasena was entitled to assess Plaintiff's credibility in regards to her pain, including her ankle pain while sitting, and other complaints, and was not required to include in the hypothetical any subjective claims he found were not credible. In *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476 (6th Cir. 2003), the Court noted that an ALJ can reject a claimant's credibility on pain and other symptoms, and exclude these from the hypothetical question to the VE, if the ALJ's reasons are adequately explained. While ALJ Sasena did not directly address the credibility of Plaintiff's ankle pain, he did find that her statements about pain generally were not entirely credible (R. 18). ALJ Sasena noted that Plaintiff's arthritis would not prevent her from performing sedentary work (R.18). Again, he noted that "the claimant has not been hospitalized or been to the emergency room because of her arthritis, and there is no evidence of any special treatment for her arthritis other than wearing a right knee brace and the taking of such pain medications as Tylenol No. 3 and Indomethacine" (R.18)(citations omitted). Furthermore, the report of

17

Plaintiff's recent medical treatment indicates that the Tylenol No. 3 was not prescribed until June 2006 and for pain in Plaintiff's ankles, not her knees (R. 100). As noted above, for these reasons ALJ Sasena found Plaintiff's statements of pain to be not fully credible and as such he was not obligated to include them in the hypothetical presented to the VE. Accordingly, there is substantial evidence to uphold the ALJ's weighing of the evidence and his conclusions should not be disturbed upon judicial review.

### III. RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A

party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: August 5, 2008　　　　　　　　　　　　s/ Steven D. Pepe
Ann Arbor, MI　　　　　　　　　　　　　　　United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 5, 2008.

　　　　　　　　　　　　　　　　　　　　　s/ Alissa Greer
　　　　　　　　　　　　　　　　　　　　　Case Manager to Magistrate
　　　　　　　　　　　　　　　　　　　　　Judge Steven D. Pepe
　　　　　　　　　　　　　　　　　　　　　(734) 741-2298